UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**CATHY MORRISON,**                 )
                                    )
    **Plaintiff,**  )
                                    )   Civil No.
**v.**                              )   13-11867-FDS
                                    )
**MANPOWER TEMPORARY AGENCY**       )
**and MIRANDA BARNES,**             )
                                    )
    **Defendants.** )
_____)

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND
PLAINTIFF'S MOTION TO APPOINT COUNSEL**

**SAYLOR, J.**

This is an action alleging unlawful employment discrimination and retaliation. Plaintiff Cathy Morrison, appearing *pro se*, has brought suit against defendants Manpower US Inc. (named in the complaint as "Manpower Temporary Agency") and one of its employees, Miranda Barnes.[1] The complaint alleges claims of hostile work environment, discrimination, and retaliation on the basis of race, ethnicity, national origin, and age.

Defendant Manpower has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Plaintiff has moved to appoint counsel. For the reasons set forth below, the motion to appoint counsel will be denied and the motion to dismiss will be granted.

**I.    Background**

The facts are presented as stated in the complaint.

---

[1] The docket shows that plaintiff has served summons on Manpower, not Barnes.

Cathy Morrison and Miranda Barnes were both employees of Manpower, a temporary staffing services company in Boston, Massachusetts. For some period of time in 2013, they both were assigned to work as temporary receptionists at Hancock National Resource Group ("HNRG"). The complaint does not include any information about Morrison's race, ethnicity, national origin, or age, although it alleges that Barnes is a "Haitian Black Female." (Compl. at 2).[2]

While Morrison was staffed at HNRG, other employees allegedly disrupted her work by leaving the caps lock on and number lock off on her computer, changing her computer password, and bumping into her desk chair. According to the complaint, Celine Bernier (who was Morrison's supervisor) and Barnes planned to access Morrison's e-mail if she were fired, attempted to destroy her reputation at HNRG, and acted hostilely toward her because she had a case in federal court. (Compl. at 2). Bernier also allegedly admitted to Barnes that she "falsely accused plaintiff wrongfully" and commented, after being in the restroom with Morrison, that "Plaintiff only urinated and she (Celine) wanted to know if plaintiff took a shit." (Compl. at 5). Barnes, in turn, allegedly told Bernier that Morrison had called Bernier a "peacock" and made "indirect life threats" against Morrison. (Compl. at 2, 5). Bernier and Barnes allegedly sought thereby to ensure that Morrison did not get a job at Manpower or HNRG. (Compl. at 4).

The complaint also alleges that two people talked about Morrison in a conference room, and that an unnamed white male confessed to having harassed Morrison in order to upset her. (Compl. at 5). Colleen Greenwald (presumably another HNRG employee) and an unnamed white female planned to "sabotage" a conference room to create the impression that Morrison

---

[2] The complaint asserts that Barnes discriminated against Morrison as a non-Caribbean and on account of her "race, ethnicity, national origin, and age." (Compl. at 1-2, 5).

was not doing her job. (*Id.*).

The complaint alleges that in her first week at HNRG, Morrison made a complaint to Manpower. (Compl. at 2). Neither that complaint itself nor its substance are disclosed in or with the pleading.

On August 5, 2013, Morrison filed a complaint *pro se* in this Court. On April 8, 2014, Manpower filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. On April 11, 2013, Morrison filed a motion to appoint counsel.

**II.     Analysis**

    **A.     Motion for Appointment of Counsel**

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, a civil plaintiff does not have a constitutional right to free counsel. *Desrosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights. *Id.* To determine whether the circumstances of a case are sufficient to warrant the appointment of counsel, the court must examine the totality of the situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent herself. *Id.* at 24.

Here, although plaintiff suggests that litigation imposes a financial burden on her, she is not proceeding *in forma pauperis* and has failed to satisfy the Court sufficiently that she is

financially unable to retain her own counsel.[3]

Even assuming that she could not afford to retain counsel, this Court cannot find that the allegations of the complaint, as pleaded, raise exceptional circumstances that would warrant the appointment of *pro bono* counsel. Indeed, as pleaded, there does not appear to be any basis for a finding of liability. Furthermore, this Court cannot find that the case presents novel or complex issues of law or fact that justify appointment at this time.

Accordingly, plaintiff's motion for appointment of counsel will be denied.

B.  **Motion to Dismiss**

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (*citing Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). *See also* Fed. R. Civ. P. 8(e)

---

[3] Plaintiff makes a passing reference to her desire not to pay additional court fees. To the extent she seeks information about proceeding *in forma pauperis*, that is, without prepaying fees and costs, the website of the U.S. District Court for the District of Massachusetts includes the necessary forms. *See* http://www.mad.uscourts.gov/general/prose-litigants.htm.

("Pleadings must be construed so as to do justice.").

The complaint here does not specify any causes of action. However, it appears to allege violations of Title VII of the Civil Rights Act of 1964, under which it is unlawful for an employer to discriminate against an employee based on his or her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To prove a *prima facie* case of discrimination, a plaintiff must show (1) that she was a member of the protected class, (2) defendant took an adverse employment action against her, (3) she was otherwise qualified, and (4) the position remained open or was filled by a person whose qualifications were similar to hers. *Johnson v. University of Puerto Rico*, 714 F.3d 48, 53 n.6 (1st Cir. 2013).

The complaint is vague and difficult to comprehend. Most importantly, it does not include any information about plaintiff's race, ethnicity, national origin, or age, other than the fact that she is not "Caribbean." It therefore fails to allege that plaintiff is a member of a protected class. Furthermore, while the complaint lists various alleged offenses by plaintiff's co-workers, it does not allege any concrete adverse employment action taken by Manpower. The connection, if any, between plaintiff's race, ethnicity, national origin, or age, and her co-workers' harassment is unclear. And the complaint fails to allege that she suffered discriminatory treatment, in the sense that she was treated less favorably than her co-workers because of her race, ethnicity, national origin, or age. Accordingly, the motion to dismiss the discrimination claim will be granted.

As for the retaliation claim, Title VII makes it an unlawful act for an employer "to discriminate against any [individual] . . . because he has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a). To make out a *prima facie* case

of retaliation, plaintiff must demonstrate that (1) she engaged in protected activity, (2) she suffered some materially adverse action, and (3) the adverse action was causally linked to her protected activity. *Dixon v. International Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007). Plaintiff must also show that the retaliator knew about her protected activity, as "one cannot have been motivated to retaliate by something he was unaware of." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013).

The term "protected activity" refers to action taken "to protest or oppose statutorily prohibited discrimination." *Fantini*, 557 F.3d at 32. The term "oppose," left undefined by the statute, "carries its ordinary meaning . . . : to resist or antagonize . . . ; to contend against; to confront; resist; withstand." *Crawford v. Metropolitan Gov't of Nashville and Davidson Cty.*, 555 U.S. 271 (2009) (internal quotations and citations omitted).

The complaint refers to a federal case that plaintiff had filed and a complaint that plaintiff made to Manpower, and seemingly suggests that Barnes discriminated against her because of the federal case. However, the substance of the other federal case and complaint are not set forth in the complaint. The complaint therefore does not allege that plaintiff was engaged in protected activity or that some adverse action was taken against her because of it. Accordingly, the motion to dismiss the retaliation claim will be granted.

As an additional ground for granting the motion to dismiss, plaintiff does not appear to have filed a complaint with the Equal Employment Opportunity Commission or Massachusetts Commission Against Discrimination prior to filing suit here. She therefore has failed to exhaust

her administrative remedies as federal and state law require.[4]

### III. Conclusion

For the foregoing reasons, plaintiff's motion to appoint counsel is DENIED and defendant's motion to dismiss is GRANTED. The complaint is DISMISSED without prejudice.

**So Ordered.**

          /s/ F. Dennis Saylor
          F. Dennis Saylor IV
Dated: May 5, 2014          United States District Judge

---

[4] Title VII requires that an aggrieved employee file an administrative charge as a prerequisite to commencing a civil action for employment discrimination. *Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009). The administrative process begins with the filing of an administrative charge before the EEOC or its state analogue (here, the Massachusetts Commission Against Discrimination). *See Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir. 2008). The employee may sue in federal court only if the EEOC dismisses the administrative charge, or if it does not bring civil suit or enter into a conciliation agreement within 180 days of the filing of the administrative charge. 42 U.S.C. § 2000e-5(f)(1); *see also Franceschi*, 514 F.3d at 85. "In either case, the EEOC must send the employee notice, in the form of what is known as a right-to-sue letter." *Franceschi*, 514 F.3d at 85. After receiving that notice, the employee has ninety days to bring suit in federal court. 42 U.S.C. § 2000e-5(f)(1).

Under Title VII, the "unexcused failure to exhaust administrative remedies effectively bars the courthouse door." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005). "Administrative remedies [can]not be considered to [be] exhausted . . . until the EEOC issue[s] [the plaintiff] a right-to-sue-letter." *Franchesci*, 514 F.3d at 85 (citing 42 U.S.C. § 2000e-5(f)(1)). Without a right-to-sue letter from the EEOC, plaintiff cannot allege claims under Title VII.